UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-22383-CIV-JORDAN/GARBER

ISABEL CANO,

    Plaintiff,

v.

HERTZ CORPORATION, a
foreign corporation,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before the Court by Order of Reference from U.S. District Judge Shelby Highsmith. Subsequently this cause was transferred to District Judge Adalberto Jordan. Pursuant to such reference, the Court received defendant Hertz's Motion for Summary Judgment [DE 26], the Response in Opposition [DE 37] and the Reply [DE 39]. The Court has also received plaintiff Isabel Cano's Cross Motion for Summary Judgment [DE 42] and the associated Response [DE 43] and Reply [DE 44]. After due consideration, the Court respectfully recommends that Hertz's Motion for Summary Judgment be GRANTED and Cano's Cross Motion for Summary Judgment be DENIED.

Cano sued under the Florida Civil Rights Act alleging that Hertz terminated her because of her gender and age. Hertz moved for summary judgment on both claims, Cano filed a cross-motion for summary judgment, and the motions were referred to the undersigned. The Court held a hearing on the motions, and Cano informed the Court that she had voluntarily withdrawn her age discrimination claim.

1

## Analysis

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). To survive a motion for summary judgment the nonmoving party must establish the existence of those elements that are essential to its case and on which it bears the burden of proof at trial. Curtis v. Broward County, 2008 WL 4216551 at *1 (11th Cir. Sept. 16, 2008) (quoting Celotex Corp. V. Catrett, 477 U.S. 317, 322 (1986)).

The Florida Civil Rights Act makes it unlawful "to discharge . . . any individual . . . because of such individual's race, color, religion, sex, national origin, age, handicap or marital status." Fla. Stat. § 760.10(1)(a). As the Florida Civil Rights Act was modeled after Title VII and the Age Discrimination in Employment Act (ADEA), court decisions interpreting either federal law are applicable to Cano's claim. Brown Distrib. Co. of West Palm Beach v. Marcell, 890 So.2d 1227, 2130 (Fla. Dist. Ct. App. 2005). Accordingly, as with Title VII or ADEA claims, Cano may present either direct or circumstantial evidence to support her claim. Cano has done the latter.

In instances where the plaintiff uses circumstantial evidence in an attempt to prove gender discrimination, courts apply the burden-shifting approach articulated in McDonnell Douglas Corp. v. Green. Curtis, 2008 WL 4216551 at *1. Under this framework, Cano has the initial burden of establishing a prima facie case of discrimination, which entails showing that "(1) she is a member of a protected class, (2) she was qualified for her job, (3) she was subjected to an adverse employment action, and (4) her employer treated similarly situated employees outside of her class more favorably." Id.

For the purposes of the motion *sub judice*, Hertz has conceded the first three prongs. The fourth prong is at issue, and the resolution of Hertz's motion for summary judgment specifically resolves on whether Cano can point to any similarly situated employee who can be used as a comparator. If Cano cannot satisfy the fourth prong, she cannot demonstrate an issue of material fact and entry of summary judgment for Hertz is appropriate. Dickinson v. Springhill Hospitals, Inc., 187 Fed.App'x. 937, 939 (11th Cir. 2006).

In Maniccia v. Brown, the Eleventh Circuit held that a comparator's misconduct must be "nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." 171 F.3d 1364, 1368 (11th Cir. 1999). Despite some past intra-circuit disagreement, the Eleventh Circuit has recently upheld this standard. Burke-Fowler v. Orange County Fla., 447 F.3d 1319, 1323 n.2 (11th Cir. 2006). Accordingly, the Court must compare the circumstances of Cano's alleged misconduct with those of her suggested comparator's to determine whether they are "nearly identical."

Cano began working for Hertz in 1975. Declaration of David Gaw ¶2. She was considered an adequate employee until Hertz disciplined her in 1995 for aiding her co-workers in their attempts to fraudulently obtain 401(k) disbursements. Id. at ¶3. Instead of firing Cano, Hertz placed her on "last chance" status. Id. Pursuant to her new status, Cano signed a last chance agreement, which acknowledged that she was subject to immediate termination for any further breach of Hertz's rules and regulations. Id. She continued working for Hertz as a back office manager until she was terminated in July 2005. Id. at ¶2.

Cano's alleged abuse of her position gave rise to her termination. A back office manager is responsible for contracting with third-party vendors for a variety of services. Id. Cano entered into

one such contract on Hertz's behalf with National Cleaning Services (NCS). Declaration of David Gaw ¶4. Subsequently, Hertz received an e-mail from a former NCS employee, which alleged improprieties in the contracting. Id. at ¶5. Specifically, the e-mail alleged that Hertz managers contracted for services at higher rates in return for a "bonus" from NCS, and listed Cano as one of several Hertz employees who received checks from NCS. Id. at Exhibit 2. Hertz interviewed Cano about the allegations, and she admitted receiving a $35 Publix gift certificate from NCS's owner, Borges. Id. at ¶6. But when Hertz continued investigating the claim, it found that NCS had written her a series of checks totaling $5,638. Id. at ¶8. When confronted with the checks, Cano said that she had received them as payment for two bicycles and a motorcycle. Id. Hertz decided to terminate Cano because she was on a last chance employment agreement, they found her actions to be against Hertz policy and her interview answers to be disingenuous. Declaration of David Gaw ¶¶9 & 14.

  Cano argues that Nestor Baluja, a male Hertz employee, is her comparator. In 2004, a vender, Isora Villa, accused Baluja of extortion. Specifically, she alleged that Baluja told her that unless she paid him, she would lose her contract with Hertz. Deposition of Larry Miller 55: 5-13 & 56: 4-8. Villa gave Larry Miller, a corporate security manager for Hertz, the number of the check she allegedly gave Baluja. Id. at 56: 9-13. Miller was unable to determine the name on the account into which the check was deposited. Id. at 56: 14-19. Because Miller felt Hertz was unable to properly investigate the allegations, he encouraged Villa to take the case to the police, which she did. Id. at 57:1-6. The police never came back to Hertz with a conclusion, id. at 59:1-4, and Hertz never uncovered any evidence to support the accusations against Baluja. Deposition of David Gaw 54:20-23. Subsequently, Baluja voluntarily left Hertz with severance pay. Id. at 124:6-12.

Baluja cannot function as a comparator because the circumstances surrounding his misconduct are not "nearly identical" to Cano's. First, there was no evidence supporting the accusations against Baluja while there was evidence supporting the allegations against Cano. Id. at 56:9-21. This difference is key. In fact, Hertz's human resources manager, David Gaw, stated that if Hertz had found evidence to support the allegations against Baluja, he would have been terminated. Id. at 167:3-11. Second, Cano was subject to a last chance agreement when she was terminated. Id. at 71:13-16. Baluja was not. These two distinctions dramatically changed the context in which Hertz made its employment decisions, and, thus, make Baluja an inappropriate comparator.

Cano also points to Roger Zuniga, a male Hertz employee, as a possible comparator. Zuniga was one of the employees listed in the e-mail that accused Cano of improprieties. Deposition of Gaw 28: 7-8. Zuniga, however, cannot function as a comparator for the simple reason that he resigned before Hertz finished investigating his misconduct. Id. at 51: 1-6. Thus, we cannot know whether Hertz would have terminated him.

Cano cannot meet her burden of establishing a prima facie case for gender discrimination because the two male employees she points to as comparators -- Baluja and Zuniga -- do not meet the Eleventh Circuit's "nearly identical" standard for comparators. Accordingly, because Cano has failed to meet the burden of establishing her prima facie case, the Court respectfully recommends that the Hertz motion for summary judgment be granted and that Cano's gender discrimination claim be dismissed.

In her cross-motion, Cano argues that she did not violate Hertz's gift policy and, thus, Hertz could not terminate her for failing to disclose her sales because she had no obligation to reveal them to Hertz investigators. This is an argument that Hertz's stated reason for terminating Cano was

5

pretextual. And, even putting aside the dubious factual support for this argument, it is premature. Cano accuses Hertz of terminating her because of her gender, and to succeed on this claim she must meet her prima facie case. Only after she has done this, and Hertz has offered a nondiscriminatory reason for her termination, is her pretext argument germane. See Curtis, 2008 WL 4216551 at *1. Because Cano has not met her burden of establishing her prima facie case, the undersigned respectfully

RECOMMENDS that the defendant Hertz's Motion for Summary Judgment [DE 26] be GRANTED and that plaintiff Cano's Cross Motion for Summary Judgment [DE 42] be DENIED.

The parties have ten days from the date of this Report and Recommendation within which to file written objections, if any, with the U.S. District Judge Adalberto Jordan. See 28 U.S.C. § 636 (1991). Failure to file timely objections may bar the parties from attacking on appeal the factual findings contained herein. LoConte v. Dugger, 847 F.2d 745, 750 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988).

RESPECTFULLY SUBMITTED at the United States Courthouse, Miami, Florida this 7th day of November, 2008.

_____
BARRY L. GARBER
UNITED STATES MAGISTRATE JUDGE