UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

CASE NO. 06-22383-CIV-JORDAN

| | |
|---|---|
| ISABEL CANO | ) |
| Plaintiff | ) ) ) |
| vs. | ) |
| THE HERTZ CORPORATION | ) ) |
| Defendant | ) |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

For the reasons which follow, The Hertz's Corporation's motion for summary judgment [D.E. 26] is GRANTED. I ADOPT Magistrate Judge Garber's report and recommendation [D.E. 66], with the additional analysis below, and OVERRULE Ms. Cano's objections [D.E. 67].

**I. PROCEDURAL BACKGROUND**

Hertz's motion for summary judgment was pending before Judge Highsmith, and he referred the motion, along with Ms. Cano's cross motion for summary judgment, to Magistrate Judge Garber [D.E. 57].[1] The case was subsequently referred to me [D.E. 64], and Magistrate Judge Garber issued a report and recommendation soon thereafter [D.E. 66], recommending that Hertz's motion for summary judgment be granted and Ms. Cano's motion for summary judgment be denied. After a *de novo* review of the issues, and after careful consideration, including oral argument, I adopt Judge Garber's report and recommendation with the following additional analysis.

Ms. Cano has brought claims for age and gender discrimination under the Florida Civil Rights Act (FCRA), Fla. Stat. § 760.01, *et seq.* Ms. Cano has voluntarily withdrawn her age discrimination claim, as reflected in Judge Garber's report and recommendation and Ms. Cano's memorandum of law in opposition to Hertz's motion for summary judgment [D.E. 36].

**II. FACTUAL ALLEGATIONS**

Ms. Cano worked as the Back Office Manager at Hertz's Miami Airport car rental facility. *See* Gaw Decl. ¶ 2 [D.E. 29-3]. In July of 2005, Ms. Cano's employment of nearly 30 years with

---

[1] I denied Ms. Cano's motion for summary judgment [D.E. 42] in a separate order.

Hertz was terminated. *See* Plaintiff's Amended Statement of Disputed Material Facts at ¶ 1. Ms. Cano's responsibilities included entering into contracts on behalf of Hertz with third party vendors and overseeing the performance of contract duties and services pursuant to contractual agreements. *See* Gaw Decl. ¶ 2. In 1995, Ms. Cano was disciplined for dishonesty when she assisted subordinates in their efforts to improperly obtain 401(k) disbursements. *See* Cano Depo. at 38-42 [D.E. 29-4]. She agreed to and signed a disciplinary memorandum known as a Last Chance Agreement, which she understood to mean "if I did anything wrong that they were going to terminate me." *See id.* at 42.

Ms. Cano admitted that she accepted checks made out to her from an NCS checking account. *See* Cano Depo. at 122, 128, 133-35. NCS was a vendor of Hertz at the time of each transaction, and Ms. Cano did not notify Hertz of these transactions, even though she was aware of Hertz's Standards of Business Conduct Policy.[2] *See id.* at 152, 159-161. Ms. Cano contends (and I adopt her version

---

[2] The Standards of Business Conduct stated in pertinent part:

> 1. It is the long standing policy of The Hertz Corporation to comply strictly in all respects with all laws and regulations affecting its business and to conduct its business in accordance with the highest ethical and moral standards. There are no exceptions to this policy and it may not be compromised or qualified by anyone acting or purporting to act for the Corporation.
>
> 2. Each employee has an individual obligation and responsibility to comply with the intent as well as the terms of this policy. All employees are expected to serve the Corporation with good judgment, discretion and integrity in performing their duties. Relations of a compromising nature, or even the appearance of such relations, must be scrupulously avoided. Each employee should have a general knowledge of permissible activities involved in his or her area of work, and should seek guidance from a superior concerning any matter that requires clarification.

*See* Cano Depo. at 161-66; Cano Depo. Exhibit 24, ¶ A. The Standards of Business Conduct included a Conflict of Interest policy that stated as follows:

> 1. No employee will directly or indirectly maintain any outside business or financial interest or engage in any outside business or financial activity that conflicts with the interests of the Corporation or its Subsidiaries or that interferes with his or her ability fully to discharge his or her corporate duties.
>
> 2. Although it is impossible to define every area in which such conflicts might exist, employees who deal with outside organizations in the purchase of products, materials or services or any transaction for the furnishing of such products, materials or services or who are in a position to influence such purchases should not have proprietary or other financial interest either in those furnishing such products, materials or services or in any transaction for the furnishing of such products, materials or services.

Cano Depo. Exhibit 24, ¶ C.

2

of the facts for purposes of summary judgment) that she received four checks from NCS for the sale of two racing bicycles that belonged to her sons and a motorcycle belonging to her brother-in-law. *See* Plaintiff's Amended Statement of Disputed Material Facts ¶ 2-3.

Hertz received an email alleging improprieties by NCS in its business dealings with Hertz and listing Ms. Cano as one such involved employee. *See* Gaw Decl. ¶ 5. Hertz conducted an investigation into the allegations and interviewed several employees, including Ms. Cano. *See id.* at ¶ 6. During the first interview, Ms. Cano admitted that she had received a $35 Publix gift certificate but stated that she had received nothing else from NCS. *See id.* She did not mention the NCS checks. *See id.* Hertz discovered four NCS checks totaling $5,638.00, interviewed Ms. Cano a second time, confronted her with copies of the checks and questioned her about the discrepancy between her previous statements that she had not received anything else from NCS and the four checks. *See id.* at ¶ 8. Ms. Cano was subsequently terminated. *See id.* at ¶ 9.

After her termination, Ms. Cano filed an EEOC charge of discrimination. *See* Plaintiff's Amended Statement of Disputed Material Facts ¶ 1. In its position paper filed in response to Ms. Cano's EEOC charge of discrimination, Hertz stated that it ended Ms. Cano's employment because she was "at best, evasive, non-cooperative and dishonest, and at worst perhaps even more," in connection with Hertz's investigation. *See id.*

Ms. Cano argues that Nestor Baluja, a male Hertz employee and her "chief comparator," was retained despite the fact that a Hertz vendor complained to Hertz management that Mr. Baluja had extorted and received a payment from her. *See id.* ¶ 6. When Mr. Baluja left Hertz, he was given severance pay, while Ms. Cano was not. *See id.* at 9 (¶ N). Ms. Cano further states that Roger Zuniga, another male comparator, was retained despite the fact that he was found to have sold more than $10,000 in chemical formulas to Hertz vendor NCS without Hertz's knowledge or consent. *See id.* ¶ 9. Mr. Zuniga resigned after Hertz interviewed him one time. *See id.* Ms. Cano also points to two females - Jean Marie Fiske and Toni Ziccardi, who allegedly violated Hertz policy by accepting gift certificates and/or baseball tickets. *See id.* ¶ 10.

Hertz argues that it is entitled to summary judgment because Ms. Cano has not established a prima facie case that Hertz violated her rights under the FCRA by terminating her employment for dishonesty and violating company policies regarding conflicts of interest with its vendors.

### III. LEGAL STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp.*, 477 U.S. at 323. That is, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (*quoting First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289 (1968)). In making this assessment, the court "must view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party," *see Stewart v. Happy Herman's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir. 1997), and "resolve all reasonable doubts about the facts in favor of the nonmovant." *See United of Omaha Life Ins. v. Sun Life Ins. Co.*, 894 F.2d 1555, 1558 (11th Cir. 1990).

### IV. DISCUSSION[3]

The FCRA makes it unlawful for an employer "to discharge . . . any individual, or otherwise to discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." Fla. Stat. § 760.10(1). The FCRA, which is patterned after Title VII, is analyzed using the same framework for Title VII claims. *See Selby v. Tyco Healthcare Group, L.P.*, 301 Fed.Appx. 908, 911 (11th Cir. Dec. 9, 2008) ("claims brought under the FCRA are analyzed under the same framework as those brought under Title VII").

Because Ms. Cano relies on circumstantial evidence to establish her FCRA claim, I apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802

---

[3] I have extensively reviewed the record and I have been unable to find a genuine issue of fact that precludes summary judgment. This review includes Ms. Cano's additional filings: (1) Notice of Supplemental Authority, curiously discussing the rule of lenity [D.E. 52]; (2) Notice of Errata [D.E. 38]; (3) Notice of filing Mr. Zuniga's affidavit [D.E. 45]; (4) Notice of Supplemental Authority [D.E. 59]; (5) Advice to the Court [D.E. 60]; (6) Notice of Errata [D.E. 68]; and (7) Summary of Record References [D.E. 73]. I also granted Ms. Cano's two motions to amend her statement of material facts [D.E. 53, 54] and considered her amended statement of disputed material facts [D.E. 57].

(1973). *See Dickinson v. Springhill Hospitals, Inc.*, 187 Fed. Appx. 937, 938 (11th Cir. June 29, 2006). Under the *McDonnell Douglas* framework, a plaintiff first must show an inference of discriminatory intent, and thus carries the initial burden of establishing a prima facie case of discrimination. *See id*; *McDonnell Douglas*, 411 U.S. at 802. The plaintiff's successful assertion of a prima facie case creates a rebuttable presumption that the employer unlawfully discriminated against her. *See Dickinson*, 187 Fed. Appx. at 939. If the plaintiff successfully demonstrates a prima facie case, the burden then shifts to the employer to produce evidence that its action was taken for a legitimate, non-discriminatory reason. *See id.*

A court proceeds to the third step of the analysis once the employer meets its burden of production by proffering a legitimate, non-discriminatory reason, thereby rebutting the presumption of discrimination, and the plaintiff must then show that the proffered reason really is a pretext for unlawful discrimination. *See id.* Although the intermediate burdens of production shift back and forth, the ultimate burden of persuading the trier of fact that the employer intentionally discriminated against the employee remains at all times with the plaintiff. *See id.* (citations omitted).

At the first step of the *McDonnell Douglas* test, to establish a prima facie case, Ms. Cano must show that: (1) she is a member of a protected class; (2) she was subjected to adverse employment action; (3) her employer treated similarly situated male employees more favorably; and (4) she was qualified to do the job. *See Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir. 1999); *Lathem v. Department of Children and Youth Servs.*, 172 F.3d 786, 792 (11th Cir. 1999). In *Maniccia*, the Eleventh Circuit held that a "comparator's misconduct must be nearly identical to prevent courts from second-guessing employers' reasonable decisions and confusing apples with oranges." 171 F.3d at 1368. Although the "nearly identical" misconduct requirement was called into question by a later panel decision, *see Alexander v. Fulton County, Georgia*, 207 F.3d 1303, 1334 (11th Cir.2000), the Eleventh Circuit has recently confirmed the "nearly identical" standard. *See Burke-Fowler v. Orange County, Florida*, 447 F.3d 1319, 1323 (11th Cir. 2006) ("we are bound to follow *Maniccia's* 'nearly identical' standard rather than the standard articulated in *Alexander* because when a later panel decision contradicts an earlier one, the earlier panel decision controls") (citing *Walker v. Mortham*, 158 F.3d 1177, 1188-89 (11th Cir.1998)). The only issue here is whether Ms. Cano can establish a comparator - any similarly situated male employee whose misconduct was

nearly identical but he was subjected to different employment policies or decisions. *See Lathem.* 172 F.3d at 793.

As noted earlier, Ms. Cano argues that Mr. Baluja and Mr. Zuniga are male comparators. Hertz argues that neither one of these two individuals were subject to a last chance agreement like Ms. Cano. Ms. Cano responds that the Last Chance Agreement should not be considered because in its response to the EEOC charge, Hertz did not state that it terminated Ms. Cano pursuant to the Last Chance Agreement, but because she was "at best, evasive, non-cooperative and dishonest, and at worst perhaps even more." *See* Plaintiff's Amended Statement of Disputed Material Facts ¶ 1. Even assuming that Ms. Cano is correct on this point, she still fails to establish that either Mr. Baluja or Mr. Zuniga is a comparator.

A Hertz vendor had accused Mr. Baluja of receiving payment and committing extortion. *See* Plaintiff's Amended Statement of Disputed Material Facts ¶ 6. The charges were investigated by Mr. Miller, Hertz's Corporate Security Manager, but the investigation did not result in any evidence that Mr. Baluja accepted cash from a vendor or that he violated any Hertz policies. *See id.* at 7. The case was referred to Miami-Dade County Police Department, but that did not result in any charges against Mr. Baluja either. *See id.* Mr. Miller testified that he conducted the investigation, and that he was unable to determine whether money was given to Mr. Baluja or to someone for Mr. Baluja. *See* Miller Depo. at 57. Mr. Miller also testified that no disciplinary action was taken against Mr. Baluja, *see id.* at 58, and that "the police never came back to us or the vendor never came back with any kind of conclusion. At that point it was just an unproven allegation." *See id.* at 59. Mr. Baluja also testified that Mr. Miller investigated him because a vendor complained that he cashed a check, but that "the result was nothing, and I'm clean like the water." *See* Baluja Depo. at 11, 15. Mr. Gaw, Hertz Human Resources Manager, also testified that if the allegation against Mr. Baluja had been proven with some evidence, he would have been terminated, and that to his knowledge, "there was no evidence presented." *See* Gaw Depo. at 167 [D.E. 57-2].

Ms. Cano places great importance on Mr. Miller's testimony, and argues that Mr. Miller stated that Mr. Baluja had a history of misdeeds and that he may have had some protection from Hertz management. *See* Objections to Report and Recommendation at 4. However, a careful

reading of the Mr. Miller's deposition testimony indicates that these allegations were in counsel's questions and Mr. Miller did not affirmatively make any such statements:

> THE WITNESS: Over the years, like I said, there had been several [investigations]. He just -- again, he was one of those guys who has a lot of allegations. They are always very broad-ranged. They are very difficult to prove. It was just -- you know. Nothing feeding type things. Just more employee relation issues where I would tend to get a call, Nestor has another . . . It would be more employee relation sort of complaints.
>
> Q In your opinion, should Mr. Bajula have been terminated from Hertz?
>
> THE WITNESS: I was surprised that he survived with all the things, but, you know, that's -- I was -- you know. He was just a very, very unique, very unusual person that just from his days of being a car salesman to -- it was just, you know, it was always something. And again, mostly employee relation stuff. Most people that worked with him, he was very offensive. He was very pushy. He was just --you know.

*See id.* at 61-62.

> Q Was it your impression that he had protection from some higher-up?
>
> THE WITNESS: Again, the choice of words is interesting. He just -- I don't know how he survived. I always tried to do everything right and all that. He just never did anything right. I don't know. I just -- he was a bullet dodger, to use the phrase.

*See id.* at 64.

Mr. Baluja is not a comparator because his alleged misconduct was not proven. Ms. Cano admitted that she received the NCS checks after she was confronted with copies of these checks. Mr. Baluja, however, denied any such allegations and neither Hertz nor the police department investigations resulted in any evidence that could be used against Mr. Baluja or which would substantiate the charges. The factual circumstances in Mr. Baluja's case were significantly different; Hertz did not terminate Mr. Baluja because it did not have any evidence to do so. Mr. Baluja therefore is not a comparator. *Cf. Schoepflin v. Rohr Aero Services, L.L.C.*, 2008 WL 899245, at *3 (S.D. Ala. Mar. 31, 2008) (holding that plaintiff failed to establish that comparator engaged in conduct nearly identical to that engaged in by the plaintiff: "The fatal deficiency in the plaintiff's use of Smith as a comparator is that he lacks any evidence that Smith was in the remotest way

involved in the conduct of his subordinates. Here, in contrast, the plaintiff's own e-mails identified him as the instigator of the incident for which he was terminated."). *See also Cooley v. Great Southern Wood Preserving*, 138 Fed. Appx. 149, 157 (11th Cir. May 18, 2005) (holding that individual was not a proper comparator because he had different circumstances than the plaintiffs). Thus, the fact that Mr. Baluja was not terminated and left with severance pay does not tend to prove gender discrimination.

Ms. Cano also argues that Mr. Zuniga is a comparator, because he sold more than $10,000 in chemical formulas to the same Hertz vendor, NCS, but was not terminated. Mr. Zuniga, however, resigned before Hertz took any disciplinary action. Ms. Cano argues that based on Mr. Gaw's testimony, Hertz had no intention of firing Mr. Zuniga even though it was aware of this sale. *See* Objections to Report and Recommendation at 13. Again, Ms. Cano mischaracterizes the witness' testimony. Mr. Gaw testified that, "[w]e had interviewed him and we had some more questions that we wanted to ask him and we were going to go back and reinterview him. And by the time of the first interview, which was on April 13th, by the time we had a chance to go back and talk to him again, he had resigned." *See* Gaw Depo. at 113.

I have carefully reviewed the relevant portions of Mr. Gaw's testimony and conclude that Ms. Cano's characterization of his testimony is taken out of context. Mr. Gaw states that he had no intention of terminating Mr. Zuniga at the first interview, he just wanted to talk to him. *See id.* at 114. He had heard that Mr. Zuniga had made this sale to NCS. *See id.* "I didn't know the details back when I – we wanted to talk to Mr. Zuniga again. And then he resigned." *See id.* "When we were going back to talk to him the second time, I – I had heard a rumor, but I didn't know anything factual about that." *See id.* at 115. "I never had a chance to even talk to the man to find out the circumstances by this rumor." *See id.* at 116. "[I]t's pretty difficult . . . to find something dishonest about an employee, and then if the corporation is going to terminate them, if they've already resigned, that's a difficult things to do because they're no longer your employee." *See id.* at 121.

Mr. Zuniga is not a comparator because he resigned after the first interview and before the second interview. Ms. Cano was fired after her second interview, when she admitted to having received the NCS checks. Hertz, therefore, did not have an opportunity to take any employment decision with respect to Mr. Zuniga because it never conducted a second interview. Mr. Zuniga

8

cannot serve as a comparator because his circumstances were not nearly identical to Ms. Cano's.[4]

Ms. Cano also points to two females "comparators," but this argument does not warrant much discussion because female colleagues cannot be used to demonstrate gender discrimination. *See Maniccia*, 171 F.3d at 1368 (in gender discrimination case, "[t]o establish a prima facie case of disparate treatment, [female] Appellant must show . . . (3) her employer treated similarly situated *male* employees more favorably") (emphasis added). In sum, Ms. Cano is unable to establish the third element of her prima facie case because she has been unable to point to any comparator. Thus, summary judgment in favor of Hertz is appropriate. *See Dickinson v. Springhill Hospitals, Inc.*, 187 Fed. Appx. 937, 939 (11th Cir. June 29, 2006) (affirming entry of summary judgment because plaintiffs was unable to identify similarly situated employees or comparators to herself).

## V. CONCLUSION

Hertz's motion for summary judgment is GRANTED. A final judgment will be issued separately.

DONE and ORDERED in chambers in Miami, Florida, this 25th day of March, 2009.

_____
Adalberto Jordan
United States District Judge

Copy to:   All counsel of record

---

[4] I have also reviewed Mr. Zuniga's affidavit, which states that "I was 'to keep an eye on Ely [Cano] and to be on the lookout for doubtful and/or suspicious activities' because according to Ms. Cinturon, Hertz was trying to get rid of Ely." *See* Zuniga Affidavit ¶ 3 [D.E. 45-2]. This statement however does not tend to prove any gender discrimination because it is a general statement without any specific references to Ms. Cano's gender.